## 11641

### McCALL v. MADISON *ET AL.*

#### (125 S. E., 737)

1. Executors and Administrators—Assignment of Bond and Mortgage by Executrix in Return for Assignee's Unsecured Note Held Procured by Fraud.—Assignment of bond and mortgage, constituting part of testator's estate, by executrix, who was in bad health, had undergone serious operations, was in a state of nervous depression and did not understand business transaction involved, to assignee, who represented himself to be a man of means, but was, in fact, insolvent, in rteurn for his unsecured note, *held* procured by fraud.

2. Executors and Administrators—Debtor's Assignment of Bond and Mortgage Fraudulently Procured From an Executrix Held Not to Give Creditors Title in View of Facts Putting Them on Inquiry.—Assignment by insolvent debtor of bond and mortgage, which he had fraudulently procured from an executrix in return for his unsecured note to creditors as collateral for past due debt, without inquiries by creditors as to right of executrix to transfer bond and mortgage to debtor, and as to manner in which he had procured the bond and mortgage, and consideration paid therefor, gave creditors no title thereto, since facts were such that they were put upon inquiry, which would have led to discovery of fraud.

Before Wilson, J., Williamsburg, February, 1924. Affirmed.

Action by Mattie O. McCall, Executrix, against S. D. Madison, J. B. Barker, Trustee, and others. Decree for plaintiff, and last named defendant appeals.

The following is the report of the Referee:

"The undersigned, to whom the above-entitled cause was referred to take the testimony and report upon all issues of law and fact therein, would respectfully show to the Court:

"That this action was brought by the plaintiff as Exe-

cutrix of A. E. McCall, deceased, for the foreclosure of a
mortgage given by the defendant, S. D. Madison, to the
said A. E. McCall, deceased. The other defendants were
made parties by the allegation that they claimed some in-
terest in the said bond and mortgage. The defendant,. Mad-
ison, answered, admitting the allegations as to the making
of the bond and mortgage set up in the complaint, but al-
leging that he was entitled to certain credits (which credits
have been allowed by plaintiff's attorneys), and further
claiming exemption from costs and fees of foreclosure, on
the ground that the ownership of the bond and mortgage
was then in dispute, and he did not know who was entitled
to claim payments. He demanded further that he be allowed
to redeem the premises by payment of the amount due on the
bond and mortgage into Court, or to such person as the
Court should find entitled thereto.

"The question of the defendant, Madison's liability for
costs and fees in this action was not pressed before me, and
I, therefore, leave that matter for adjustment by the Court.

"The defendant, Dell Pettys, was in default, and the other
defendants answered, setting up the assignment by the said
Dell Pettys to the defendant, J. B. Barker, as Trustee for
certain of his codefendants of the said bond and mortgage.
There was no allegation of an assignment of said mortgage
to Dell Pettys, but, at the hearing of the cause before me,
plaintiff's attorneys waived objection, and allowed proof of
such assignment. The plaintiff attacked the several assign-
ments by which the said bond and mortgage were trans-
ferred to the defendant, Barker, as Trustee, on the ground
that the assignment by the plaintiff of the said bond and
mortgage to the defendant, Dell Pettys, had been procured
by fraud; that the plaintiff, as Executrix, had no right to
assign said bond and mortgage without an order of Court
of Probate; that the defendant, Barker, as Trustee, and his
*cestui que trustent,* had taken said assignment as collateral
security for a past due debt of the said Dell Pettys, and had

not paid value therefor, nor surrendered any rights or interests in consideration of said assignment, and that further they were charged with the duty of inquiring into the right of the plaintiff to assign said bond and mortgage, and upon such inquiry would have obtained information of the fraud by which they came into possession of the said Dell Pettys. Testimony was introduced in support of these various conflicting allegations and claims, which I herewith report to the Court.

"I will first consider the rights of the plaintiff with respect to the claims of the defendant, Barker, as Trustee, and those for whom he acted.

"There can be no question from the evidence in this cause that the defendant, Pettys, obtained the assignment of the bond and mortgage to himself, by fraud. It is a question as to whether the plaintiff sold the bond and mortgage to Pettys, in consideration of his unsecured note, or whether she transferred it to him as her agent, for the purpose of procuring through him the cash therefor, taking his note as mere memorandum of the transaction. The plaintiff in her testimony set up the fact that she had been in bad health, had undergone serious operations, was in a state of nervous depression, and did not understand the business transaction involved in this case.

"Her testimony is so lacking in clearness as to sustain her allegations as to her inability at the time, to form a clear judgment as to what she was doing. Such a mental condition as she sets up would be the only explanation of such disposition of valuable assets as she made.

"She complained at the reference of being in a highly nervous state, scarcely able to testify, and her testimony and manner of testifying impressed me that she was in a highly disordered state, and, if such a state existed at the time that Pettys procured the bond and mortgage, she could then have been easily imposed upon.

"If it be suggested that the relation of agency could be inferred, and that she delivered the bond and mortgage to Pettys, with the expectation that he would procure for her the cash for it, and that the promissory note, unsecured except by his statement that he was a man of means and had real property in Florida, was a mere memorandum of the transaction, this would not alter the case, for, in either case, whether Pettys procured the bond and mortgage in return for his unsecured note, or whether he attempted to create the relation of agency with her, could make no difference, because his relation to her, in either or any event, was procured by fraud, and he acquired no right whatever in said document.

"As to the claims of the defendant, Barker, and his cestui que trustent, their assignor having procured the title to the bond and mortgage in question by fraud, and having no real ownership thereof, could have transferred to the said defendants any valid rights therein only in case his assignees had paid value for the choses in action at the time of the transfer, or had at that time surrendered rights or interests which would put them in a worse condition than they were before, in case the assignment was not valid, and they would be charged with the duty of showing that they had had no notice of any fraud, or of any facts which would put them on inquiry as to the ownership of the papers. I have given these questions very serious consideration, and have reached the conclusion that there has been absolutely no showing whatever that the last assignees of the bond and mortgage paid anything of value therefor, or lost anything by reason of their acceptance of the assignment. The papers were placed in their charge by the defendant, Pettys, as collateral for any past due debt, and it was shown that Pettys at least was insolvent, as also the corporation debtor, and that whatever nominal securities they had prior to the assignment were of absolutely no value, and a suit would have been fruitless. The only

thing which they did not do that could have been done
was to prosecute Pettys for disposing of property under
lien, and that proceeding would not have procured the pay-
ment of his debt to them, and the use of that method of
collecting the debt would have been illegal. I think, further,
that the fact that the bond and mortgage were assigned by
an executrix was enough to put these defendants upon in-
quiry as to her right to make such transfer. I am fully con-
vinced that if the defendant banks had been considering
the purchase of these papers for cash, they would have made
full inquiry as to everything connected with the title to the
papers, as well as to the value of the property mortgaged.
They made no such inquiries, and they should, therefore,
be held to the position which they would have been in had
they made the inquiries and discovered the fraud.

"A mere letter to the plaintiff would have brought the
information which would have convinced them at once of
the questionable nature of the title of Pettys to these papers,
and it is further proof of the position that they paid abso-
lutely nothing of value, and surrendered no rights when
they accepted such papers without any inquiry whatever.

"Besides, the testimony drawn from their own witnesses
shows that Pettys had disposed of all of the property to
which they were looking for payment, and had left the
State, and that Pettys was without property and the banks
knew that he was wholly unreliable in business matters, and
his associates whose testimony is before the Court, had to
go to Florida in order to have Pettys do something to re-
lieve the situation; that the banks were pressing them and
that he (Pettys) had to do something to relieve the situa-
tion, and that finally he got Pettys to return.

"Immediately following the procurement of the assign-
ment to him, and judging by the distance between the two
places, as quickly as Pettys could get there, he delivered the
papers procured from the plaintiff to the representative of
the different banks.

"The character which had been developed by Pettys in his dealings with these defendants, and his own inability to pay anything on account of the large indebtedness which he owed the banks, were, in themselves, circumstances which ought to have given notice to them that he had no means of procuring this bond and mortgage by fair and honest methods, else he would have been in a position to have rendered the same consideration to the banks to this extent, without attempting to get these papers, and it appears from the testimony that they made absolutely no inquiry at all, even of Pettys, as to the manner of procuring the papers or as to the consideration for the transfer.

"I, therefore, conclude, as matter of law and fact, that the ownership of the bond and mortgage sued on in this case remains in the plaintiff, as Executrix of the will of A. E. McCall, deceased.

"I find that there is due upon the bond set up in this action, after allowing the credits claimed by the defendant, Madison, including interest to July 16, 1923, the sum of $6,573.21, leaving in abeyance the question as to attorney's fees."

*Mr. R. P. Searson,* for appellant, cites: *Ground on which Courts of Equity interfere to set aside sales or other solemn acts:* Story's Eq., 227; 122 S. C., 203. *Bona fide purchaser of non-negotiable instrument for value and without notice, takes subject to original equities:* 100 S. C., 452; 3 R. C. L., 1027; 97 S. C., 453; 113 S. C., 282.

*Messrs. Tatum, Wood & Wilson* and *Purdy & Bland,* for respondent, cite: *Assignment:* Code 1922, Vol. 1, Sec. 3689. *Statute has no application to the sale of property consisting of choses in action:* 13 Rich. Eq., 269; 23 S. C., 438; 30 S. C., 559. *Bona fide purchaser for value without notice:* 35 Cyc., 348; 4 Rich. Eq., 105; 3 Rich. Eq., 33; 6 S. C., 159; 113 S. C., 282; 57 S. C., 124; 43 S. C., 287; 111 S. C., 507. *Burden of proof:* 88 S. E., 28.

December 31, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The report of E. C. Haynsworth, Esq., Master, confirmed by his Honor, Judge Wilson, Circuit Judge, is entirely satisfactory to this Court, and for the reasons stated therein, the decree of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.